**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZEIKOS INC., <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN CO., <br><br> Defendant. | Civil Action No. 21cv19993 (EP) (JRA) <br><br> **OPINION** |

**PADIN**, **District Judge.**

Plaintiff Zeikos Inc. ("Zeikos") alleges various contract and fraud claims against Defendant Walgreen Co. ("Walgreen") stemming from agreements to favorably position Zeikos electronic accessories in Walgreen stores. Walgreen moves to transfer this action to the Northern District of Illinois based on an earlier agreement's forum selection clause, and to dismiss certain claims. D.E. 29. The Court decides the motion without oral argument pursuant to Local Civil Rule 78.1(a). For the reasons below, the Court will **GRANT IN PART** Walgreen's motion, transfer this action to the Northern District of Illinois, and **DEFER IN PART** the remainder of the motion.

## I.    BACKGROUND[1]

### A.    The parties begin their business relationship and sign the General Agreement

Zeikos is a New Jersey corporation which imports and re-sells electronic accessories, mostly under the "iHip" trademark. D.E. 24 ("Am. Compl.") ¶¶ 2, 4. Walgreen, an Illinois

---

[1] Except where otherwise noted, these facts are drawn from the well-pled factual allegations in Zeikos's Amended Complaint, assumed for the purposes of this motion to be true.

corporation, is a subsidiary of Walgreens Boots Alliance, Inc., one of the largest retail pharmacy chains in the United States and Europe.  ¶ 2.

The parties' relationship began in 2011, with one Zeikos salesperson selling to one Walgreen store.  ¶ 6.  On February 29, 2012, the parties entered into a General Trade and Electronic Data Interchange Agreement.  D.E. 29-3 (the "General Agreement").[2]  The General Agreement "[s]ets forth the terms and conditions under which the parties agree to facilitate their purchase and sale transactions."   General Agreement at 2.  Its terms "shall apply to all merchandise…sold by [Zeikos], directly or indirectly through its distributors, to Walgreen."  *Id.*  The General Agreement also contained a choice-of-law/forum selection clause:

> This Agreement shall be construed in accordance with the substantive laws of the State of Illinois, without regard to principals of conflict or choice of law.  The parties hereby consent to the exclusive jurisdiction of the courts of the State of Illinois or Federal District Court of the Northern District of Illinois and agree to waive all objections as to venue and forum non conveniens.

General Agreement 4 at § D(7).

The business relationship evolved further; eventually, senior Zeikos officers sold directly to Walgreen's corporate office buyer.  *Id.*  The sales relationship generally involved Walgreen giving Zeikos a purchase order, which Zeikos then filled.  ¶ 7.

**B.     The Placement Agreement/Premium Space dispute**

On May 14, 2019, Zeikos President Jack Saideh and Vice President James Trappani met with Walgreen's new electronic accessories buyer Albert Gehrke at Walgreen's offices in Deerfield, Illinois.  ¶ 9.  At the meeting, Gehrke proposed a new arrangement: Zeikos could bid

---

[2] The General Agreement, attached to Walgreen's papers, was not specifically mentioned in the Amended Complaint, although the Amended Complaint does allege a "ten-year supplier-customer relationship."  Am. Compl. ¶ 1.

on the right to sell its merchandise in a four-shelf fixture in highly desirable Walgreen stores sections adjacent to the cash registers (the "Premium Space").  ¶ 10.  Gehrke represented to Saideh and Trappani that Walgreen had sold between $80,000,000 and $100,000,000 of private label merchandise in the Premium Space over the prior year and, before that, $250,000,000 of brand name "Tech&Go" merchandise.  ¶¶ 12.

Negotiations culminated in Zeikos offering Walgreen $9,000,000 to place Zeikos merchandise in the Premium Space for one year.  ¶ 14.  The parties ultimately executed the Product Placement Agreement (Exh. A to Am. Compl., the "Placement Agreement").  ¶¶ 15-19.  The Placement Agreement provided that Zeikos would credit $9,000,000 to Walgreen in exchange for placement in the Premium Space for one year, which would be re-bid to other vendors after one year if Zeikos did not achieve $100,000,000 in net sales during the first year.  ¶ 18.

Walgreen promptly issued an $8,000,000 purchase order to Zeikos and claimed an immediate credit of $5,000,000.  ¶ 20.  However, initial projections disclosed in late October 2019 "demonstrated that Zeikos had little chance of selling $100,000,000 of its merchandise in the Premium Space."  ¶ 21.  Zeikos raised its concerns to Walgreen but, "[d]espite additional communications, Walgreen did not provide satisfactory answers."  ¶¶ 21-23.

In April 2020, the parties entered into an Amended and Restated Product Placement Agreement (Exh. B. to Am. Compl., "Amended Placement Agreement").   The Amended Placement Agreement, among other things, clarified certain requirements of the original Placement Agreement.  Am. Compl. ¶¶ 40-56.  In 2021, the parties negotiated their future business regarding the Premium Space over email; according to Plaintiff, this constituted another agreement.  ¶¶ 57-65 (the "2021 Agreement").

C.      **Procedural history**

Zeikos filed its first Complaint on November 15, 2021.  D.E. 1 ("Compl.").  The Complaint alleged three claims: breach of the 2019 Product Agreement (Count One), breach of the 2021 Agreement (Count Two), and failure to pay for goods sold (Count Three).

The parties stipulated to Zeikos filing an Amended Complaint, which Zeikos filed on May 23, 2022.  D.E. 23.  The Amended Complaint alleges five claims: fraud in the inducement of the Placement Agreement (Count One); negligent misrepresentation in the inducement of the Placement Agreement (Count Two); Breach of the Amended Placement Agreement (Count Three); Breach of the 2021 Agreement (Count Four); and failure to pay for goods sold and delivered (Count Five).[3]

Walgreen now moves: (1) to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. §§ 1406(a) and 1404(a); and (2) dismiss the Amended Complaint's Counts One and Two pursuant to Fed. R. Civ. P. 12(b)(6).  D.E. 29-1 ("Mot.").  Zeikos opposes.  D.E. 35 ("Opp'n").  Walgreen has replied.  D.E. 38 ("Reply").

II.     **DISCUSSION**

A.      **Motion to transfer to Northern District of Illinois**

The Court addresses the motion to transfer first because transfer would counsel in favor of denying and/or deferring the motion to dismiss.  *See, e.g.  Abbott Labs. v. Roxane Labs., Inc.*, Civil Action No. 12-457, 2013 U.S. Dist. LEXIS 74316, at *92 (D. Del. May 28, 2013) (denying motion to dismiss as moot upon transfer); *United States v. 25 Grilles*, No. 2:18-cv-09324, 2019 U.S. Dist. LEXIS 239884, at *1 (C.D. Cal. Apr. 25, 2019) (deferring motion to dismiss to transferee court).

---

[3] This claim relates to purchase orders not made pursuant to the parties' other agreements.  Am. Compl. ¶¶ 80, *et seq.*

4

Walgreen argues that pursuant to 28 U.S.C. § 1406(a) and Fed. R. Civ. P. 12(b)(3), any forum outside Illinois would be improper.  Mot. 3.  Zeikos argues that Walgreen waived this argument because Walgreen admitted in its first Answer that venue was proper, and thus waived that objection pursuant to Fed. R. Civ. P. 12(h).  Opp'n 4-5.

Walgreen also argues that transfer to Illinois would be appropriate pursuant to 28 U.S.C. § 1404(a).  Mot. 4.  Zeikos responds that the forum selection clause does not justify transfer because the General Agreement containing that clause does not govern this action's dispute, that Walgreen also waived its § 1404(a) transfer argument, and that public and private interest factors weigh against discretionary transfer.  Opp'n 7-15.  Because the first two are threshold arguments regarding the forum selection clause's applicability, the Court addresses those first.

1.    *The General Agreement encompasses these disputes*

Zeikos argues that its claims relate to agreements other than the General Agreement, and therefore that the General Agreement's forum selection clause does not apply.  Walgreen disagrees, arguing that the General Agreement was meant to frame and encompass the parties' subsequent business relationship, including Placement and Amended Agreements.  Walgreen argues that the General Agreement "set the ground rules for future engagements, akin to plumbing for the anticipated flow of commerce between the parties."  Reply 2.  The Court agrees with Walgreen.

Forum selection clauses are generally treated as ordinary contract provisions subject to ordinary rules of contract interpretation.  *John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997); *see also Eckhardt v. Idea Factory, Ltd. Liab. Co.*, 2021 IL App (1st) 210813, ¶ 15, 456 Ill. Dec. 214, 221-22 (stating that Illinois courts have long relied on federal case law as persuasive authority when interpreting forum selection clauses).  In interpreting any

contract, "a court's paramount consideration" is the parties' intent. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980). Of course, a contract's language is the clearest indication of intent. *Id.* When contractual language is unambiguous, *i.e.*, "reasonably capable of only one construction," the court must enforce the contract as written. *Wyeth*, 119 F.3d at 1074.

However, when contract language is capable of more than one reasonable construction as determined by "objective indicia . . . [viewed] from the linguistic reference point of the parties," the contract is ambiguous and the court should look beyond the four corners of the contract to extrinsic evidence, such as party negotiations, to discern and give meaning to the intent of the parties. *Mellon*, 619 F.2d at 1009; *Sumitomo Machinery Corp. v. Allied Signal*, Inc., 81 F.3d 328, 332 (3d Cir. 1996). Ambiguous contract language should be construed against the drafter. *N.J. Reg'l Council of Carpenters v. Jayeff Constr. Corp.*, No. 11-903 2011 U.S. Dist. LEXIS 116918, at *10 (D.N.J. Oct. 11, 2011). However, courts should "avoid ambiguities if the plain language of the contract permits…[and] should not torture the language…to create ambiguities." *Wall Street Aubrey Golf v. Aubrey*, 189 Fed. Appx. 82, 85 (3d Cir. 2006), citing *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1311 (3d Cir. 1986). There is no reasonable ambiguity here about the forum selection clause's meaning—it means precisely what it says. Rather, the issue is whether the General Agreement's forum selection clause encompasses the parties' dispute regarding subsequent agreements.

It does. A relationship between the parties established by broad language, and built upon in subsequent agreements, counsels in favor of enforcing an early agreement's forum selection clause. *Sixty-Two First St., LLC v. CapitalSource Fin. LLC*, No. 11-01920, 2011 U.S. Dist. LEXIS 60231, at *6 (N.D. Cal. June 6, 2011) (enforcing forum selection clause in earlier written

agreement in action based on subsequent oral agreement because the action "necessarily arises from or is related to the Loan Agreement or the Loan."). *Cf Applied Energetics, Inc. v. NewOak Capital Markets, LLC.*, 645 F.3d 522, 526 (2d Cir. 2011) (holding that earlier agreement's arbitration clause was voided by subsequent agreement's forum selection clause because the latter directly contradicted and voided the former). Courts have enforced forum selection clauses applicable to disputes in business relationships "created by an earlier agreement." *See Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.*, 537 F. Supp. 2d 672, 673 (D.N.J. 2008) (holding that dispute stemming from oral billing agreement nevertheless out of the business relationship created by an earlier agreement, thereby implicating the earlier agreement's forum selection clause) (citing *Crescent Int'l Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir. 1988) (holding that non-contractual claims were still subject to a contract's forum selection clause where the claims "ar[o]se out of the contractual relation and implicate the contract's terms")).

Moreover, a forum selection clause's scope is not limited to claims for breach of the contract containing the clause. *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993). For that reason, "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Crescent Int'l.*, 857 F.2d at 944-45 (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983) (applying forum selection clause to related tort claims as well as to contract claims of third party beneficiary), *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718 (2d Cir. 1982) (applying forum selection clause in distributorship agreement to anti-trust claim).

Here, as Walgreen argues, the initial General Agreement containing the forum selection clause created the "ten-year supplier-customer relationship" referenced in the Amended

Complaint.  ¶ 1.  The General Agreement "sets forth the terms and conditions under which the parties agree to facilitate their purchase and sale transactions."  General Agreement 2.  Those terms and conditions "apply to all merchandise…sold by [Zeikos], directly or indirectly…to Walgreen." *Id.*

It is fair to characterize the Placement Agreement, as Zeikos urges, as an agreement confined *mostly* to the placement of products sold by Zeikos to Walgreen.  But mostly does not mean entirely: the Amended Complaint itself acknowledges that the Placement Agreement provided that "Walgreen would *purchase certain types of Zeikos's merchandise*…and place that merchandise in the Premium Space."  Am. Compl. ¶ 17 (emphasis added).  And indeed, the Placement Agreement references Walgreen's "opening order" of the merchandise for the Premium Space.  Placement Agreement ¶ 4.  Likewise, the Amended Agreement pertained to "Zeikos's sales to Walgreen."  Am. Compl. ¶ 43.  Thus, because the General Agreement's "all merchandise sold" defines the relationship between the parties expansively, and because the Placement and Amended Agreements relate to "merchandise sold," the General Agreement's forum selection clause is enforceable.

2.    *The motion to transfer is not untimely*

Zeikos also argues that Walgreen waived its forum selection argument by admitting in its original Answer that venue was proper in this District.  Walgreen does not dispute that the Original answer did not reference the forum selection clause, but argues that it could not have known about the forum selection clause until Zeikos's Amended Complaint, and in any event that courts have permitted enforcement of forum selection clauses at advanced stages of litigation.  The Court agrees with Walgreen; the motion is not untimely.

Zeikos is correct about the general improper venue framework.  Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue."  The improper venue statute is Section 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  And Rule 12(h)(1) provides that a party "waives any defense listed in Rule 12(b)(2)-(5)"—including improper venue—in an initial answer or motion.

Moreover, contrary to Walgreen's argument, the mere fact that Zeikos filed its Amended Complaint did not automatically provide Walgreen a second opportunity to enforce the forum selection clause.  This is because the filing of an amended complaint does not revive the right to enforce defenses that could have been asserted before amendment.  *See Bell v. Lockheed Martin Corp.*, Nos. 08–6292, 10–4297, 2011 WL 1467365, at *9 (D.N.J. 2011); *Chan v. County of Lancaster*, No. 10-3424, 2012 WL 4510776, at *13 (E.D. Pa. 2012); *cf. DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 2006 WL 1275394 at *5 (D.Idaho May 9, 2006) (observing that, when an amended complaint "*changes the theory or scope of the case*, the defendant is allowed to plead anew as though it were the original complaint").

Here, the forum selection clause argument was available earlier than Walgreen lets on.  True, the Amended Complaint added claims, but it did not appreciably alter the underlying facts or scope of the case relevant to the General Agreement and forum selection clause.  The Amended Complaint was identical to its predecessor as to the genesis of the parties' business relationship and the General Agreement around that time, *i.e.* the parties conducted business from approximately 2011, shortly before executing the General Agreement which contained the forum selection clause.  Am. Compl. ¶¶ 1, 6.  Though neither the original nor the Amended Complaint

explicitly mention the General Agreement, both pleadings were equally capable of alerting Walgreen to the Agreement's existence, and therefore to the forum selection clause. It is unclear how the "new tort allegations prompted further investigation" that revealed the 2012 General Agreement when those torts are alleged to have occurred in 2019 and beyond. Reply 4.

And it is also true, as Zeikos further argues, that courts have regularly deemed forum-selection clauses waived when not raised in initial responsive pleadings. Like the defense of lack of personal jurisdiction, an improper venue defense is waived if not raised in the first instance. *Hull v. Glob. Digital Sols., Inc.*, No. CV 16-5153, 2018 WL 4380999, at *11 (D.N.J. Sept. 14, 2018); Fed. R. Civ. P. 12(h); *Myers v. Am. Dental Asso.*, 695 F.2d 716, 720 (3d Cir. 1982) ("If a party files a pre-answer motion but fails to raise one of the defenses [such as improper venue], the party waives the omitted defense and cannot subsequently raise it in his answer or otherwise.").

But most such decisions occurred before the Supreme Court's unanimous decision in *Atlantic Marine v. United States Dist. Court*, 571 U.S. 49, 55, 134 (2013), and thus—as Zeikos urges here—relied upon Rule 12(h)(1) to find waiver. *See, e.g., Tri-State Emp't Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 n.2 (2d Cir. 2002) ("[B]ecause defendant failed to raise any venue challenge in a pre-answer motion or responsive pleading, *see* [Rule] 12(h)(1)(B), defendant is deemed to have waived any objection to venue."). *Atlantic Marine* clarified, however, that a Rule 12(b)(3) or Rule 12(b)(6) motion is not the proper way to enforce a forum-selection clause, and thus Rule 12(h)(1)'s waiver clause is inapplicable. *See* 134 S. Ct. at 580. And because that is the case, the failure to promptly file a Rule 12 motion as a first response, as Walgreen failed to do here, does not constitute a waiver. Or phrased differently, Walgreen did not waive an argument it was not required to make.

Accordingly, 28 U.S.C. § 1404(a), the codification of the *forum non conveniens* doctrine, is the appropriate mechanism to enforce a forum selection clause. *Atl. Marine*, 571 U.S. at 59. And under § 1404, Walgreen's motion is timely.  Courts have required a defendant to assert a *forum non conveniens* motion only "*within a reasonable time* after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonable knowable to the defendant." *In re Air Crash Disaster New Orleans, La., on July 9*, 1982, 821 F.2d 1147, 1165 (5th Cir. 1987), *vacated on other grounds*, 490 U.S. 1032 (1989).  And even then, untimeliness alone does not effect a waiver; rather, the effects of a defendant's dilatoriness are party of the court's analysis, along with weighing the public and private concerns.  *Id.* at 1165; *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 613 (3d Cir. 1991); *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1291 (11th Cir. 2009) ("[T]here is generally no time limit on when a motion to dismiss for forum non conveniens must be made, which differentiates it from the time limits on a motion to dismiss for improper venue.").

Here, even the delay between the initial Complaint, filed on November 15, 2021, and Walgreen's motion, filed June 21, 2022, is not unreasonable.  *See Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681, 2013 U.S. Dist. LEXIS 156024, at *7-9 (D.N.J. Oct. 30, 2013) (motion not untimely even after summary judgment motion where court found no dilatory tactics and where motion became appropriate only upon an expanded record); *cf. 8th Circuit Estate of I.E.H. v. CKE Rests., Holdings, Inc.*, 995 F.3d 659, 663–665 (8th Cir. 2021) (motion untimely when party litigated for 18 months while in possession of facts providing basis for motion); *Clarke v. Marriott Int'l, Inc.*, No. 2008-086, 2013 U.S. Dist. LEXIS 125963, at *27-28 (D.V.I. Sep. 4, 2013) (motion untimely two months before trial).  There is also no evidence of dilatory conduct on Walgreen's part.  Accordingly, the Court considers Walgreen's motion timely.

3.        *Transfer to the Northern District of Illinois is appropriate*

Turning to section 1404(a)'s substantive requirements, the statute provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Section 1404(a) "place[s] discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors. *Id.*  "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations."  *Id.* at 62.

However, where, as here, there is a valid forum selection clause, the traditional Section 1404(a) analysis is inapplicable. *Atl. Marine*, 571 U.S. at 51 (2013).  The court should not consider the private interest factors, and "may consider only public interests."  *Id.*  The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  "The § 1404(a) movant bears the burden of persuasion."  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  But even those factors "will rarely defeat a transfer motion[;] the practical result is that forum-selection clauses should control except in unusual cases."

12

*Id.* at 57-58.  The public interest factors must be analyzed "only to determine whether they overcome the strong presumption in favor of enforcing forum-selection clauses." *Howmedica Osteonics Corp. v. Howard*, No. 19-19254, 2020 U.S. Dist. LEXIS 39560, at *14 (D.N.J. Jan. 17, 2020).

Here, the factors are all neutral.  First, any judgment would be equally enforceable by the District of New Jersey and the Northern District of Illinois.  Second, the Court is not persuaded that there is any difference in efficiency or cost savings that favor either forum; the location of evidence and convenience of witnesses are private interest factors the Court does not consider here.  *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 406 (3d Cir. 2017).  Third, this action has proceeded in an expedited manner and there is no colorable argument that any party's interests have been impaired or delayed by court congestion.  Fourth, the two courts have an equal interest in deciding this controversy at home as the parties are citizens of New Jersey and Illinois.  *Id.* at 410.  Fifth, this Court is confident that both courts could ably apply whatever law is applicable to Zeikos's claims.  *See Atl. Marine*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").  The Court therefore finds that the public interest factors do not outweigh the strong presumption in favor of the forum selection clause's enforcement, and will accordingly transfer this matter to the Northern District of Illinois-Eastern Division.[4]

### B.    Motion to dismiss

Walgreen also moves to dismiss Zeikos's tort claims.  Based on the transfer, the Court will defer the motion to dismiss to the transferee court.  *Abbott Labs,* 2013 U.S. Dist. LEXIS 74316, at *92.

---

[4] The Eastern Division encompasses Cook and Lake Counties, where Deerfield, Illinois is situated.

**III.    CONCLUSION**

For the reasons above,  the Court will **GRANT IN PART** Walgreen's motion (D.E. 29) to the extent of transferring the matter to the Northern District of Illinois.   The remainder of the motion is **DEFERRED** to the transferee court.  An appropriate order accompanies this Opinion.


Dated**:** January 18, 2023

Evelyn Padin, U.S.D.J.
